## UNITED STATES v. LOT 29, BLOCK 16, HIGHLAND PLACE, CITY OF OMAHA, NEB., et al.

(District Court, D. Nebraska, Omaha Division. March 7, 1924.)

### No. 573.

1. **Intoxicating liquors** ⬅⟞261—**Court of equity can only abate nuisances existing.**

   A court of equity should only abate such liquor nuisances as are existing, or enjoin such as are shown to be actually threatened, and, in absence of statute, equity should not abate or enjoin a liquor nuisance in a house owned by husband and wife as a homestead, where one of the owners had made some wine and sold some of it, but the liquor and apparatus had been seized.

2. **Jury** ⬅⟞14(12)—**Statute as to abatement of nuisance by injunction held unconstitutional.**

   National Prohibition Act, tit. 2, §§ 22, 23 (Comp. St. Ann. Supp. 1923, §§ 10138½k, 10138½l), providing for actions in equity to abate liquor nuisances and for injunction, are intended to apply, though no nuisance exists at the date of the hearing and are unconstitutional, because the federal government cannot put offenders against federal laws on trial, except before a jury.

In Equity. Suit by the United States against Lot 29, Block 16, Highland Place, City of Omaha, Neb., and Maria Maier and others, to abate a liquor nuisance and for an injunction. Petition dismissed.

E. D. O'Sullivan (of Jamieson, O'Sullivan & Southard), of Omaha, Neb., and Geo. N. Mecham (of Rosewater & Mecham), of Omaha, Neb., for defendants.

James C. Kinsler, U. S. Atty., and George A. Keyser, Asst. U. S. Atty., both of Omaha, Neb.

WOODROUGH, District Judge. The United States brings this action in equity to abate a liquor nuisance and for injunction and other relief, as provided under title 2, section 22, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½k). The allegations of the petition are simply in the language of the statute, to the effect that the defendants William Maier and Mary Maier, as tenants of the defendant Mary Maier, are occupying and using the property involved as a place where intoxicating liquor is sold and kept for sale, and that the place and furniture therein are a public and common nuisance, for the reason that intoxicating liquor is there unlawfully kept for sale and sold, and there is a prayer for both temporary and permanent injunction against the alleged nuisance and the individual for the abatement of the nuisance, and for what is sometimes called a "padlock" order, to prevent use or occupancy of the place for the period of a year and other relief.

The defendants filed a motion to dismiss for want of equity jurisdiction, and, in order to present the case more fully to the court, certain stipulations of fact were entered into at the hearing of the motion to dismiss, and certain statements of fact were made by the district attorney, and the facts so stipulated and stated are considered as though they were incorporated in the petition. From the facts so presented to the court in the petition itself, the stipulations, and the statements made, it appears that the property in question, although standing on the record as belonging to Mary Maier, is the homestead of the defendants, who are husband and wife, and who, appearing personally in the court, are persons past middle age, still occupying the home, from which their children have departed to set up homes for themselves. It appears that the defendant William Maier has, since the Prohibition Act went into effect, made and has unlawfully sold some wine, which was intoxicating liquor containing more than the prescribed percentage of alcohol by volume. It is also shown that upon the proof to that effect before the United States commissioner a search warrant was issued, and prohibition agents entered the home, removed the liquor, and arrested both the husband and wife. Information was duly filed against both husband and wife, but there was not sufficient evidence against the wife, who was accordingly dismissed out of the criminal action. The husband pleaded guilty to the criminal charge and sentence was imposed upon him.

At the same time there were a number of cases in a similar situation, so that the mechanical and stenographic work in the district attorney's office caused some time to be consumed before the present petition was filed; that is to say, some few days intervened between the arrest and the criminal proceedings before the present petition was presented to the court and a temporary restraining order issued thereon. It is admitted that, after the prohibition agents made the search, confiscation, and arrest, and up to the time of the hearing, there is no competent evidence of any other infraction of the Prohibition Law by the defendants, or either of them, or of any threat on the part of defendants to repeat any violation of the liquor law.

It is presented in the motion to dismiss that the court is without jurisdiction or power to proceed further in the matter for want of equity jurisdiction. Since the enactment of the National Prohibition Law very few serious contentions have been urged at the bar of this court against the exercise by the court of the equity and injunction powers conferred by the terms of the Prohibition Law, and this has been so largely because owners of property generally have co-operated with enforcement agents and prosecuting officers to suppress the liquor traffic on premises owned by them, and such owners of property have themselves favored and assisted in the eviction of lawless tenants, and have in many instances been willing that use of the property should be discontinued until guilty tenants are gotten rid of and other tenants secured, who could be reasonably expected to make lawful use of the premises. Many property owners have indicated that it was against their own interests that their properties should be used by lawless persons and for unlawful purposes.

But in this case an earnest attack is made upon the power of the court to grant any equity or injunctional relief whatever, and it is contended that the particular provisions of the Prohibition Act on which the government must rely are unconstitutional. It is urged that in the absence of an express statute the case here presented would not justify any relief in a court of equity, and that the statute attempting to confer such power upon the court of equity is unconstitutional. More particularly, the defendants contend that there is simply presented a case where a crime has been committed in the past, and the guilty party has been punished for his crime. In so far as his crime was of a continuing character, and so might be called a nuisance, the nuisance has been abated by the lawful seizure of the liquor and appliances, so that there is not at present any nuisance to be abated, or any threatened wrong to be enjoined against, or any ground of equity jurisdiction.

[1, 2] In the absence of a statute it would hardly be claimed that an equity court would have any power to issue an injunctional order, or indeed any kind of an order, in such a case as this. It seems to be an elemental principle that a court of equity should only abate such nuisances as are existing, or enjoin such as are shown to be actually threatened; but as to wrongs that are past and done the remedies would appear to be at law and not in equity. Counsel for the government do not seriously question this general limitation upon the power of equity courts, but in this case they stand squarely and have drawn their petition solely upon title 2, sections 22 and 23, of the National Prohibition Act, which provides:

"Sec. 22. An action to enjoin any nuisance defined in this title may be brought in the name of the United States by the Attorney General of the United States, or by any United States attorney or any prosecuting attorney of any state or any subdivision thereof, or by the commissioner or his deputies or assistants. Such action shall be brought and tried as an action in equity and may be brought in any court having jurisdiction to hear and determine equity cases. If it is made to appear by affidavits or otherwise, to the satisfaction of the court, or judge in vacation, that such nuisance exists, a temporary writ of injunction shall forthwith issue restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the liquor or fixtures, or other things used in connection with the violation of this act constituting such nuisance. No bond shall be required in instituting such proceedings. It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored in such room, house, building, boat, vehicle, structure, or place, or any part thereof. And upon judgment of the court ordering such nuisance to be abated, the court may order that the room, house, building, structure, boat, vehicle, or place shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used, if the owner, lessee, tenant, or occupant thereof shall give bond with * * * the penal and liquidated sum of not less than $500 nor more than $1,000, payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this title upon said property.

"Sec. 23. That any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person, company or corporation, keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure, any liquor, or who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things.

"In such proceedings it shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law.

"For removing and selling property in enforcing this act the officer shall be entitled to charge and receive the same fee as the sheriff of the county would receive for levying upon and selling property under execution, and for closing the premises and keeping them closed a reasonable sum shall be allowed by the court.

"Any violation of this title upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease."

It is insisted upon the part of the government that these provisions of the statute confer a new power and jurisdiction upon the equity courts which they are bound to exercise, and it is said that the plain meaning of the statute is such as to cover the case here presented; that the statute means that the order of injunction should issue in the case at bar, as well as the other remedial orders, notwithstanding the fact that there is now no nuisance existing or being maintained by the defendants, and notwithstanding there is no testimony available to prove that such nuisance will recur. On the other hand, it is insisted by the defendants that, if such be the meaning of the statute, and if its terms do confer power to issue injunctions and close up dwelling houses and exact securities in this sort of a case, the act is void because, so interpreted, the act would be merely a means to suppress crime as such and to punish criminals as such by proceedings contrary to the constitutional requirement that all crimes shall be tried by a jury.

As it seems clear that no equity jurisdiction would exist in the absence of a statute, it is necessary to ascertain the true intent of Congress as to the particular provisions under consideration. Was it the intention of Congress that injunctions and "padlock" orders should issue and security be exacted in cases where there is no testimony to show and no evidence of nuisances existing or that nuisances will be continued? To get at the true intent of the act, it seems to me to be necessary to consider both of the sections which cover the matter of injunctions and equity powers in the suppression of the liquor traffic. In section 23 of the act (Comp. St. Ann. Supp. 1923, § 10138½l) which immediately follows section 22, above set forth, the courts of equity are given power to issue perpetual injunctions against individuals who have within 60 days prior to the commencement of suit against them, been guilty of what is called "bootlegging" in the marginal notation of the statute.

It is specifically provided that it need not be shown that the offenders are bootleggers at the time of the suit or hearing, but it is sufficient to show that they have been bootlegging within 60 days of the time that the bill is filed. After injunction is issued against them,

they may summarily be tried for contempt, whenever they are accused of any of the large number of criminal offenses that are included in so-called "bootlegging" in the marginal notation of the Statutes at Large. Opposite these provisions there appear the words "Intention inferred from violation," and I am satisfied that the notation has exactly hit upon the cardinal idea of this law, which is that the equity courts may infer that a man intends to continue bootlegging if he has been recently guilty of it. Such being obviously the thought and meaning of section 23, it is difficult to avoid the conclusion that no different or contrary purpose was intended in the provision of section 22 under consideration in this case.

The defendant here having admittedly used his home to sell liquor heretofore, the purpose of the provision evidently is to empower the court to infer that he is likely to, or probably would, do the same again, and to prevent it an injunction should issue and securities be exacted, or he be evicted from his home and the same closed for a year. It does not seem possible to ascribe any other meaning to the express words of section 22:

"It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing."

Those words reflect the same thought that is expressed in almost the same way in section 23, and that is that the proof of past offending is all the evidence required to set the powers of the equity court in motion. Accordingly the case of the government here is rested squarely on the language of the statute itself, and the government, conceding that there is now no nuisance, and conceding that there is no proof of any unlawful act since the arrest and confiscation of the liquor and appliances, asks for enforcement of the equity provisions as they stand. It seems clear to me that, if the law is valid, the jurisdiction invoked would exist, and the cause should proceed.

Although it is true that, at the moment or on the day the bill was filed, there was no nuisance, because arrests and confiscation had taken place before, still it is probable that the delay between the time when the arrests and seizures were made and the bill was filed was merely the time necessary to do the mechanical work of stenography in the numerous cases then before the district attorney. So the case does come within the statute, and the court must squarely face the question whether the law, which confers equity power under the facts here presented, is constitutional, or whether these provisions of the act merely provide a means to suppress crime as such, and to punish criminals as such, by proceedings contrary to the constitutional requirement that all crimes shall be tried by jury.

It might be possible to construe section 22 to mean that injunctions are to issue only where there is proof of reasonable grounds to apprehend future maintenance of a nuisance independently of the past offenses, and so to decide this case on such consideration of the statute; but I am persuaded that such is not the right interpretation, and that Congress intended to confer equity power to abate and enjoin liquor nuisances and to "padlock" dwelling houses without regard to the situation at the time of the hearing of the injunction suit. Such ap-

pears to me to be the reasonable conclusion, not only from the express language of section 22, but as it is to be read along with the immediately following section 23. The language of the act is clearly intended to confer equity power in just such a case as is here presented.

In this case the man's home had been entered, and all the wine and beer that went to make the place a nuisance had been abated, before this suit was filed, and nothing now remains of the nuisance at his home, except the man himself. There is no nuisance, except as it may be inferred from the fact that he has heretofore committed the offenses included in bootlegging and maintaining a nuisance. The court is to infer that he will probably, or is likely to, resume and continue, notwithstanding he has suffered the rigor of the criminal law. The statute says that an injunction may now be laid upon him, he may be evicted from his home for a year, or compelled to give security against violating any of the numerous inhibitions of the liquor law. Thereafter, as long as he lives in his home, he may be summarily dealt with for contempt whenever the judge of this court, upon affidavit or otherwise, shall be persuaded that he has violated the liquor law at his home.

The plan of the provisions of the statute under consideration is the same in substance as that of the Iowa liquor laws on the same subject, which have long been in force in that state, and have frequently been before its court of last resort. There are also laws in other states, including Kansas, Missouri, Massachusetts, Georgia, North Dakota, etc., which embody the same purpose to use the strong arm of equity as an aid in suppressing the liquor traffic. These laws are held to be constitutional within the several states where they have been enacted. In Iowa and other states equity power to suppress the liquor traffic exists, but the equity courts do not issue their injunctions in cases where, as in this case, actual abatement and cessation of the nuisance is shown to have taken place before the suit was brought and was manifest at the time of the hearing. It is true, however, that those courts appear to have refrained from enjoining only in the exercise of discretion. They do not repudiate a power to enjoin merely because there is not at the time an existing or threatened nuisance. They take jurisdiction of the case; the chancellor weighs the evidence and refrains from enjoining only in the exercise of sound judicial discretion. To my mind it seems of the utmost importance that the question whether such equity power can exist under the federal Constitution should be authoritatively determined in the federal courts.

So far as the question arises in the several states, it does not have quite the practical importance that it has under the federal Constitution. In all of the states, so far as I know, trials of offenses against the liquor laws have been very generally conducted before police or other magistrates, and jury trials are not always invoked, except upon appeal or review in the courts superior to the magistrate's courts. In practical working out, therefore, under state laws, a bootlegger, who has had an injunction laid against him, may not be very seriously affected thereby. If he is again accused, he must face the chancellor; but, if there is no injunction, the accusation against him would

merely bring him before the magistrate. In either event, there would be many cases in which there is no question of jury trial. He would be dealt with by a single judicial officer. But in the Constitution of the United States there is no trial of crimes, either grave or petty, before a magistrate. The only method provided for the trial of crimes is the trial by jury, and this seems to me to be an important practical distinction, and may possibly account, in a measure, for the acquiescence of state courts in the use of injunction to suppress crimes against the liquor laws.

Another factor that considerably lessens the controlling effect of the state decisions on the determination of these questions in the federal courts is this: The so-called police power inheres in the state sovereignty. The suppression of intoxicating liquor within the states comes within the police powers of the state. In the exercise of those powers individuals may be coerced and penalized, and there is no violation of constitutional safeguards as long as there is due process of law. Accordingly magistrates are invested with authority to try offenders and impose punishments suitable for misdemeanors, if through the process of appeal, or otherwise, the right of jury trial is ultimately available to the accused. But the only powers of the national government are delegated powers. They are not to be arrogated or assumed, and especially the power to try or punish offenders against the criminal law is expressly limited and defined by the constitutional provision that all crimes shall be tried by a jury. Although the power of the sovereign state to provide a procedure for the suppression of intoxicating liquor by means of injunctions and equity courts should be clear, it would not follow that the same course would be open, under the Constitution, to the federal government. The federal government cannot put offenders against its criminal laws on trial, except before a jury. This is a very fundamental feature of the federal institution and must be scrupulously safeguarded by the court.

In the case at bar the statute says that, because the defendant has on previous occasions violated the liquor law, the court may issue an injunction against him, and this must be because of the inference that there is probability and likelihood that he will do so again. This is oftentimes not an unreasonable supposition. Experience certainly shows that men who have been guilty of bootlegging, even after they have been punished criminally, do engage in the offenses again. The same is unfortunately true, however, as to almost any other criminal practice. It is in accord with our experience that, if persons become addicted to the use of narcotic drugs and violate the Drug Acts, even after they have been criminally punished, they fall into the same course of conduct again. It is not contrary to experience that thieving, once learned as a vocation, is resorted to even after punishments have been inflicted. Counterfeiters often come out of the penitentiary with full-fledged plans in their heads to again engage in their nefarious line of work. Indeed, it is difficult to think of any crime, in which the punishment meted out for a first offense is less than capital, as to which temptation to repeat does not frequently overcome its victims. It is not clear that the tendency of bootleggers to go back to

their outlawed trade is stronger or greater than the same tendency in other offenders.

Obviously, it would greatly simplify criminal procedure if all persons whom the chancellor deems guilty of criminal offenses could thereafter be laid under injunctive process, and all subsequent accusations against them could be dealt with by the chancellor, instead of by the tedious, uncertain, costly, and laborious process of jury trials. There is nothing new about this idea, and up to a short time before the Constitution of the United States was adopted there was undoubtedly a strong and aggressive party in the English Parliament still urging and insisting upon a revival of the powers of the Court of Star Chamber. That court proceeded in criminal causes without any of those restraints that hamper and retard the law courts in their jury trials, and was especially concerned with the suppression of treason and sedition. Traitors and seditious agitators also persist and continue their offending in spite of punishment, and in their cases also the procedure at law before the jury is laborious, costly, and uncertain. Their assembling and places of assembling are nuisances, as that word is defined. There is every possible reason why they should be dealt with summarily without jury trial that can be advanced for so dealing with bootleggers. But there is reason to believe that the simple declaration, "All crimes shall be tried by jury," was incorporated in the Constitution of the United States with a very determined purpose to absolutely prevent any court of criminal jurisdiction like that of the Star Chamber Court ever coming into existence in this country.

But, if equity courts, as such, may function for the suppression of crime, as provided in this statute, if such courts may, without a jury, inquire into alleged crimes against the liquor law, and may issue their injunctions because they find that in the past such crimes have been committed, and may thereafter punish for contempt, it would seem that all of the important powers of the Court of Star Chamber are assumed in this indirect way. In the case at bar the court is asked to inquire, without a jury, whether the defendant, some time previous to the institution of the suit, made and sold liquor. If the chancellor is satisfied that he did, this law says that the chancellor may evict the defendant from his home, and close up his home for a year, thereby imposing upon him an indeterminate, but absolute, penalty. The court may not know the exact extent to which a residence property will be damaged and deteriorated in this city, if left vacant and unoccupied for a year; but it may take judicial notice that such damage might be greater than a sum equivalent to the reasonable value of its use. In addition to this indeterminate penalty, the court is asked to enjoin the defendant perpetually from committing further crimes against the liquor law. There is no scintilla of evidence that he would commit such crimes without the injunction, except the inference that he probably will offend again, because he offended in the past. After the injunction laid upon him for the rest of his natural life, or as long as he occupies his home, any accusation against him of liquor violation must be tried without a jury, and by the chancellor in a contempt case.

If, to suppress the liquor traffic, this power can be conferred upon equity courts, it can also be conferred to suppress the drug traffic, and I can see no very sound reason why it could not be used to suppress any crime in the calendar of crimes. If it can be so used, then the constitutional provision that all crimes shall be tried by jury would have no force ex propria vigore, but only by grace of Congress. We would have jury trials where Congress permits, but need have none where a procedure by injunction is provided for. The fact is the limitation of equity powers is so fundamentally a part of the equity system that the equity system cannot exist in disregard of those limitations. The court of equity may, in certain cases, abate existing nuisances, even though the nuisance is made up of criminal acts, and where it is proven that nuisances will continue, unless enjoined, equity may issue injunctions, but there is the natural and necessary limit of equity powers. When it is sought to confer powers upon a court of equity contrary to these limitations, the attempt must fail, because neither directly nor indirectly can the constitutional safeguards against one man power in criminal cases be erased.

The government rests mainly on the decision of the Supreme Court in the case of Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. That was a controversy between a distiller of intoxicating liquor and the state of Kansas. The law of the state forbids distilling. It defined an establishment where liquor was distilled to be a nuisance, and authorized the abatement of the nuisance by a court of equity. The distiller insisted that he had invested his money and property in his distillery, and that the Prohibition Act of Kansas was an attempt to deprive him of it without due process of law. He resisted the civil and criminal suits that were brought against him on the ground that he had a right to his property and to the use of it for distillery purposes. He was running the distillery, when this injunction suit was brought against him, under a claim of right to keep on running it. The Supreme Court of the United States sustained power of the Kansas court to abate the existing and continuing and threatened nuisance; but the Supreme Court was in no wise concerned nor was there drawn before it any such question as is presented by the case at bar.

It seems to me of great importance that the constitutional question which is directly involved in this case should be presented promptly to the Supreme Court of the United States. It might be possible to determine this case adversely to the government in the same way that some analogous cases have been decided in the state courts. It would doubtless be competent for me to decide, as has been done by the state courts of Iowa, with the approval of the Supreme Court, that in the exercise of a sound discretion I ought not to proceed further with the inquiry in this case. As a chancellor I could very conscientiously say that this old man, who sits before me with his wife, is not likely to traffic in liquors again in his home. In fact, on the trial of the criminal case, I received strong assurance to that effect from both the husband and the wife. But there is squarely involved the question of power that is important. Has the chancellor the power to evict him from his home and close it up for a year? Has the chancellor the

power to judge this man? Can the chancellor in the future judge between him and his accusers? I feel it my duty to put the decision of this case upon the constitutional provision, and to decide, as the ground of dismissal of the case, that the act which attempts to confer such powers on the chancellor is contrary, to the constitutional requirement that the trial of all crimes shall be by jury, and hence is null and void, as applied to the case at bar.

All of the provisions concerning the issuance of injunctions to suppress the liquor traffic are not involved in this case. Whether or not the act is valid in so far as it provides for the abatement of nuisances existing at the time of the trial, or nuisances that are impending or shown by competent evidence to be threatened, all of those questions must remain open until raised in cases in which they are involved.

As to the present case, the petition is dismissed, because the particular provision of the law on which it is based is unconstitutional and void.