## UNITED STATES v. SCHWARTZ et al.

(District Court, D. Massachusetts. September 22, 1924.)

No. 1901.

1. **Intoxicating liquors** ⚖══265 — **Nuisance; "padlock" provision of Prohibition Act not applicable to property of innocent landlord.**

Construing National Prohibition Act, tit. 2, §§ 21–23 (Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l), together, section 22 does not authorize the closing for a year of a building as a common nuisance because of the illegal manufacture or sale of liquor therein by a tenant, when the owner had no knowledge or reason to believe that the building was being so illegally used.

2. **Intoxicating liquors** ⚖══258—**Abatement suit is one in personam.**

A suit in equity to abate a nuisance, under National Prohibition Act, tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), is a suit in personam, and not one in rem against the property as the offender.

3. **Intoxicating liquors** ⚖══259—**Jury** ⚖══14(12) —**Statute providing for abatement of liquor nuisance by injunction held constitutional.**

National Prohibition Act. tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), providing for abatement of a liquor nuisance by injunction, *held* not unconstitutional as involving punishment for crime by a court of equity without a jury trial, since the maintenance of a nuisance is not necessarily a crime, nor because the court may draw the inference from past violations of the law that maintenance of the nuisance is continuous or will recur.

In Equity. Suit by the United States against Benjamin Schwartz and Abraham Melamed. Bill dismissed as to defendant Melamed, and injunction granted against defendant Schwartz.

Elihu D. Stone, Sp. Asst. U. S. Atty., of Boston, Mass., for the United States.

Simon B. Stein, of Boston, Mass., for defendant Melamed.

Arthur Harrington, of Boston, Mass., for defendant Schwartz.

ANDERSON, Circuit Judge. This is a suit in equity, brought under the so-called padlock provisions of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), to abate a liquor nuisance in Chelsea. As it is the first contested case of this kind in this jurisdiction, and as it raises questions likely to be recurrent, it

seems worth while to express briefly some of the views that this court has been constrained to form as to the scope and meaning of these provisions.

The two defendants are Benjamin Schwartz and Abraham Melamed. Schwartz is alleged to own and conduct a grocery business on the described premises; Melamed is alleged to be the owner of the record title. There is no allegation that Melamed had knowledge or reason to believe that the premises were being used for illegal purposes.

[1] The facts are that Melamed bought this building some three years ago; that it was then occupied and used as a grocery store, owned and conducted by Ida Schwartz, the mother of the defendant Benjamin Schwartz. Ida Schwartz had then, and still has outstanding, a married woman's certificate, duly filed in the city clerk's office, Chelsea. Benjamin is a minor, 18 or 19 years old, who, on the evidence before this court, sometimes helped out in the store, although his main occupation was that of learning the job of an electrician. He was not the proprietor or regularly employed in the conduct of the business.

The evidence shows that on January 17 and 18, 1924, intoxicating liquor was sold in this store to two prohibition agents; that on January 22, under search warrant proceedings, some six gallons and various pint bottles of liquor were seized. This liquor was "moonshine," containing 40-odd per cent. of alcohol. It follows that on all the evidence the place should be held a nuisance within the meaning of the statute; so that, if the proper parties were before the court, the remedies provided in title 2, section 22 (Comp. St. Ann. Supp. 1923, § 10138½k) might be applied. Melamed, the owner, on the facts, neither had nor was chargeable with having any knowledge of any illegal use of the premises occupied by Mrs. Schwartz as his tenant at will.

But in behalf of the government it is insisted that the statutes make, so to speak, the premises guilty; that it is not necessary to prove that the owner knew or had reason to believe that his tenant was making a nuisance of the leased premises. I am unable to adopt that view. The sections pertinent are as follows:

"Sec. 21. Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure, or place is occupied or used for the manufacture or sale of liquor contrary to the provision of this title, and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure, or place shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction." Comp. St. Ann. Supp. 1923, § 10138½jj.

"Sec. 22. An action to enjoin any nuisance defined in this title may be brought in the name of the United States by the Attorney General of the United States or by any United States attorney or any prosecuting attorney of any state or any subdivision thereof or by the commissioner or his deputies or assistants. Such action shall be brought and tried as an action in equity and may be brought in any court having jurisdiction to hear and determine equity cases. If it is made to appear by affidavits or otherwise, to the satisfaction of the court, or judge in vacation, that such nuisance exists, a temporary writ of injunction shall forthwith issue restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the liquor or fixtures, or other things used in connection with the violation of this Act constituting such nuisance. No bond shall be required in instituting such proceedings. It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored in such room, house, building, boat, vehicle, structure, or place, or any part thereof. And upon judgment of the court ordering such nuisance to be abated, the court may order that the room, house, building, structure, boat, vehicle, or place shall not be

occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety, to be approved by the court making the order, in the penal and liquidated sum of not less than $500 nor more than $1,000, payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this title upon said property." Comp. St. Ann. Supp. 1923, § 10138k.

"Sec. 23. That any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person, company or corporation, keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure, any liquor, or who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things.

"In such proceedings it shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law.

"For removing and selling property in enforcing this Act the officer shall be entitled to charge and receive the same fee as the sheriff of the county would receive for levying upon and selling property under execution, and for closing the premises and keeping them closed a reasonable sum shall be allowed by the court.

"Any violation of this title upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease." Comp. St. Ann. Supp. 1923, § 10138½l.

In the first part of the first sentence of title 2, section 21 is the definition of a liquor nuisance. In the second part of this sentence it is provided that persons maintaining such nuisances may be criminally prosecuted as misdemeanants. In the second sentence it is provided that, "if a person has knowledge or reason to believe" that his premises are being used as such nuisance, such premises "shall be subject to a lien for and may be sold to pay all fines and costs assessed against the person guilty

of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction." It follows, conversely, that, if the owner of premises, made a nuisance by his tenant, has neither knowledge nor reason to believe that the premises are being so illegally used, no lien would lie against the property for fines and costs assessed against the nuisance maintaining tenant.

The present action is brought under title 2, section 22. In this section it is provided that "such action shall be brought and tried as an action in equity," and, after provisions authorizing temporary injunction, the statute goes on to provide that, "upon judgment of the court ordering such nuisance to be abated, the court may order that" the premises "shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety," conditioned, in effect, against a recurrence of the nuisance.

At the end of title 2, section 23, we find: "Any violation of this title upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease."

While most leases contain provisions that illegal use shall, at the option of the lessor, work a forfeiture, here is an express provision of the statute enabling an owner, who finds his leased premises used for illegal liquor purposes, to oust forthwith the tenant and thus abate the nuisance.

Construing these statutes together, and in the light of their obvious purpose, the government's contention that under section 22 the court may, and in cases like the present should, order the premises to be padlocked against any use for a year, seems to me untenable. It is unnecessary to discuss whether Congress has constitutional power to impose such a penalty on an innocent owner. We have, of course, a considerable number of illustrations of liability without fault, as under Workmen's Compensation Acts; the sale of milk below standards (G. L. Mass. c. 94, § 18); so as to property used in revenue frauds, Goldsmith Grant Co. v. United States, 254 U. S. 505, 41 Sup. Ct. 189, 65 L. Ed. 376; R. S. § 3450 (Comp. St. § 6352).

The general rule at common law is the other way—that persons innocent of actual or imputed wrongdoing shall not be penalized either criminally or in the civil courts. The construction of section 22, contended

for by the government, would frequently result in depriving an entirely innocent owner of premises of any use or income from his property for most, if not all, of a year, because the nuisance creating tenant would frequently be merely a tenant at will, and, if put out of business, financially irresponsible. Only very plain language would warrant a construction so unjust and so inconsistent with elementary principles as to property rights.

Moreover, the provision in section 21 making the premises of the owner liable to fines only in case the owner has knowledge or reason to believe that his premises are being used for nuisance purposes makes strongly against the contention that Congress intended by section 22 to provide that the innocent owner might find his premises padlocked for a year without having had knowledge and a resultant opportunity to abate the nuisance—a penalty that frequently would cost the owner much more than a large direct fine. If knowledge or reason to believe is requisite in order to make premises responsible for the fines imposed upon the creator of the nuisance, a fortiori, knowledge or reason to believe is a condition precedent to the imposition of the drastic punishment of padlocking the premises for a year.

Some of the constitutional difficulties that would arise from the government's construction are dealt with by the Supreme Court of Washington in State v. Emerson, 90 Wash. 565, 155 Pac. 579, L. R. A. 1916F, 325. The language used in sections 21–23, supra, seems to me to indicate plainly that Congress intended to avoid, when providing remedies as against nuisances in prohibition enforcement, constitutional questions which had arisen in some of the cigarette laws and red light laws referred to in that opinion of the Washington Supreme Court. Compare Carleton v. Rugg, 149 Mass. 550, 22 N. E. 55, 5 L. R. A. 193, 14 Am. St. Rep. 446, and the dissenting opinion of Justice Field, concurred in by Justices Devens and Allen.

It seems to this court plain that the proceedings contemplated by this federal statute bear close analogy to those authorized by the much better drawn provisions of the General Laws of Massachusetts, c. 139, §§ 4–11.

In section 6 is a provision authorizing a bill in equity against the person maintaining the nuisance, and the owner, lessee, or agent of the place in or upon which such nuisance exists; and in section 9 it is provided that, "if it shall appear that the bill of complaint was filed five or more days after notice to the record owner of the premises, and that he did not proceed forthwith to enforce his rights under section nineteen, such order of abatement shall further direct the effectual closing of the building or the place and the prohibition of its use for any purpose for one year, unless sooner released as provided in section eleven. For the purpose of proving the existence of the nuisance the general reputation of the place shall be admissible as evidence."

Section 9, thus referred to, gives the owner of leased premises on which nuisances are thus created power to avoid the lease, as does section 23 of the Prohibition Act, supra. We find here explicit provisions for holding the owner only if and after he has had opportunity to repossess himself of his premises and abate the nuisance. Obviously, if he fails so to do, he becomes a contributing causal factor in maintaining the nuisance, and may justly and legally be penalized.

Much of the law relative to equity proceedings to abate this sort of a nuisance is collected and reviewed in a learned and interesting opinion by Mr. Justice Braley in Chase v. Revere House, 232 Mass. 88, 122 N. E. 162. The Massachusetts statutes, as construed and applied by the Massachusetts court, furnish a safe and sound analogy for the construction and application of these provisions of the Prohibition Act. Compare, also, North American Storage Co. v. Chicago, 211 U. S. 306, 29 Sup. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276.

[2] The government urges that in United States v. Boynton (D. C.) 297 Fed. 261, 267, Judge Tuttle has in substance adopted the view now urged upon this court. Nevertheless I remain unable to accord with that construction of the statute. I think, if Congress had intended to authorize the courts to penalize innocent owners of premises on which their lessees are maintaining a liquor nuisance, it would have made that purpose so clear that there would have been no room for construction. The provision in section 22 is, as already noted, that such action shall be brought and tried as "an action in equity." Equity acts in personam against persons who create or maintain a nuisance. This is no in rem proceeding. The statute does not authorize this court to find the premises guilty, as does R. S. § 3450. See Goldsmith Grant Co. v. United States, 254 U. S. 505, 509, 41 Sup. Ct. 189, 65 L. Ed.

376. Owners notified that their premises are being made nuisances by their tenants, who fail, by repossession of the premises or by other effective means to abate such nuisances, may, on unassailable and familiar principles of equity procedure be held responsible as persons maintaining the nuisance. This construction of the statute leaves it with plenty of teeth, and relieves it from possibly fatal objections as to constitutionality.

[3] On the other hand, this court cannot adopt the contention of defendant's counsel that the statute is unconstitutional. Reliance for this view is placed upon the opinion of Judge Woodrough in United States v. Lot 29, Block 16, Highland Place, City of Omaha, 296 Fed. 729, filed March 7, 1924, in the Omaha Division of the District Court for the District of Nebraska. The statute does not seem to this court to be open to the objections that Judge Woodrough found insuperable. The fact that Congress provided a double remedy against such nuisances, making them both criminal misdemeanors and, if continuous or recurrent, subject to abatement by equity proceedings, does not seem to involve any unconstitutional criminal jurisdiction by a court of equity. Nuisances are not necessarily crimes. Congress might, if it had seen fit, have provided no criminal remedy whatever.

Nor do the rules of evidence in sections 22 and 23, to the effect that a finding of violation at the time of trial shall not be necessary, seem to me to cause difficulty. These provisions do not require the court to find a nuisance, unless the illegal acts may be found continuous or in reasonable probability recurrent—the necessary elements of a nuisance. They simply authorize the court to draw the inference as to recurrence, from a single act of a kind that Congress deemed of rather unusual significance in that regard. Of course, the inference from the single sale may be controlled by other facts indicating an abatement of the nuisance.

Applying, now, the principles stated to the facts in this case, it is clear that, as Melamed, the owner, neither knew nor had reason to believe that his premises were illegally used, he is entitled to have the bill as to him dismissed, and dismissed, not as matter of discretion, but as matter of right.

So far as the other defendant, Benjamin Schwartz, is concerned, while, as already indicated, he cannot be held as proprietor, there is sufficient evidence that he partici-pated in the nuisance to warrant enjoining him from selling or participating in the sale of intoxicating liquors on the described premises.

Decree accordingly.