## UNITED STATES v. CHESEBROUGH MFG. CO. et al.

(District Court, S. D. New York. February 10, 1926.)

1. **Intoxicating liquors** ⬮277—Decree closing premises after nuisance effectively abated and inference of recurrence removed by owner's ouster of tenants is unwarranted (National Prohibition Act, tit. 2, §§ 21–23 [Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l]).

In proceedings under National Prohibition Act, tit. 2, §§ 21–23 (Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l) to abate nuisance where owner of premises, before entry of decree, has effectively abated nuisance and removed inference of recurrence by ouster of tenant and subtenant who maintained nuisance, decree closing premises would be an unconstitutional exercise of punitive power by court of equity to punish for past offense without jury trial, and should not issue.

2. **Intoxicating liquors** ⬮275—Provision that, in nuisance abatement proceedings, court need not find that property is being unlawfully used is mere rule of evidence (National Prohibition Act, tit. 2, § 22 [Comp. St. Ann. Supp. 1923, § 10138½k]).

Provision in National Prohibition Act, tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), that in proceedings to abate nuisance it shall not be necessary for court to find property involved is being unlawfully used at time of hearing, is simply a rule of evidence, and is inapplicable where abatement at time of entry of decree is conceded.

3. **Constitutional law** ⬮48.

Construction rendering statute of doubtful constitutionality must be avoided if fairly possible.

4. **Intoxicating liquors** ⬮277—Personal injunction against subtenant in proceedings to abate liquor nuisance held proper, though facts did not warrant closing of premises (National Prohibition Act, tit. 2, §§ 21–23 [Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l]).

In nuisance abatement proceedings, under National Prohibition Act, tit. 2, §§ 21–23 (Comp. St. Ann. Supp. 1923, §§ 10138½jj–10138½l), personal injunction against subtenant, who had been maintaining nuisance on premises involved and who failed to appear, *held* proper, though owner's effective abatement of nuisance by ouster of tenant and subtenant rendered decree closing premises improper.

In Equity. Suit by the United States against the Chesebrough Manufacturing Company and others to abate liquor nuisance. Bill dismissed as to all parties except defendant Tony Zeona, and decree for the United States against him.

Suit in equity under sections 22 and 23 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §§ 10138½k, 10138½l), to abate a nuisance maintained in violation of section 21 of the same title (section 10138½jj) in the basement of the premises No. 111 Washington street, New York City, and for a personal injunction pursuant to section 23 against the defendants other than Chesebrough Manufacturing Company, the owner of said premises, restraining said defendants from soliciting or taking or accepting orders for the sale of, and from selling intoxicating liquors for beverage purposes either on said premises or anywhere else in the Southern district of New York.

Emory R. Buckner, U. S. Atty., of New York City (J. Edward Lumbard, Jr., of New York City, of counsel), for the United States.

Burke & Kirk, of New York City (William A. Kirk, of New York City, of counsel), for defendant.

THACHER, District Judge. Chesebrough Manufacturing Company owns the premises No. 111 Washington street. Prior to any of the matters complained of, the street floor and basement of these premises were leased for a term of years expiring May 1, 1927, to the defendant Brumack, who in turn sublet the basement to the defendant Zeona, the latter being in possession thereof when the violations of the Prohibition Act of which the government complains occurred. The owner has appeared and answered. The tenant has appeared, but has not answered, and the subtenant, although served with process, has not appeared. Upon learning of the government's complaint, the owner immediately took steps to eject the tenant and his subtenant from the basement of the building where the violations occurred. This was accomplished before the case was reached for trial. In the meantime, however, the tenant signed a stipulation consenting that the basement from which he and his subtenant were about to be ousted by his landlord be closed under the order of this court for a period of six months, and consented that an order to this effect might be entered at any time without further notice. The allegations of the complaint being denied by the owner, the case was called for trial, and the foregoing facts were stipulated. Thereupon the owner moved to dismiss the complaint, reserving its right to a trial of the issues if the motion should be denied. The government consents that the bill be dismissed as to the owner, but, upon the stipulation of the tenant, asks an order closing the premises for six months, or in the alternative that the owner be required to give bond under section 22 of the act, and further prays a personal injunction against Tony Zeona under section 23 of the act.

There are two causes of action alleged: The first under section 22 of the act to enjoin or abate the nuisance maintained on the premises in question; the second under section 23 of the act to enjoin the tenant and his subtenant from soliciting or taking or accepting orders for the sale of, and from selling intoxicating liquors for beverage purposes, either on said premises or anywhere else in the Southern district of New York. From the facts stipulated, it appears that the nuisance has been completely abated by the ejectment of the persons concerned in its maintenance, including, not only the offending subtenant, his servants and employees, but the acquiescent landlord as well. The case must be distinguished from one in which there has been a colorable change of possession, or even an actual change of possession, with circumstances from which a recurrence of the unlawful use can be inferred. It cannot be said that, by reason of the past conduct or associations of those remaining in control of the property, the extraordinary remedies of the court are in any sense necessary to prevent a recurrence of a nuisance perhaps only temporarily abated. U. S. v. Margolis (D. C.) 289 F. 161. No person even remotely connected with the wrongdoing remains. There has been a complete ouster at the instance of an innocent owner who, it is shown, promptly put a stop to the nuisance when advised of its existence, ejecting all persons concerned in its maintenance from the premises. Repentance under compulsion is very often appropriately re-enforced by decree. This is not such a case. No fault attaches to the owner here, and there is nothing in its conduct from which reasonable probability of a recurrence can be rationally apprehended.

[1] The question which arises, therefore, is whether, the nuisance having been completely abated before entry of decree, the court may nevertheless order the premises closed against use and occupation. The nuisance having been abated, the effect of such a de-

cree would be purely punitive, and this punishment would fall upon none of the persons concerned in the offense, affecting only the property interest of an innocent owner. A construction of the statute authorizing the exercise of any such power by a court of equity would indeed present constitutional questions of a most extraordinary and serious character. Judge Woodrough, in U. S. v. Lot 29, etc. (D. C.) 296 F. 729, feeling impelled to hold that Congress intended to confer upon an equity court authority to enter decrees purely punitive in character, imposing punishment for past offenses and enjoining the commission of future offenses, had no hesitation in declaring the nuisance sections of the statute unconstitutional. The construction which he felt impelled to adopt has not been followed in the other circuits. That these nuisance sections of the Prohibition Act are a valid exercise of legislative power has been twice adjudicated by the Circuit Court of Appeals in this circuit. U. S. v. Reisenweber, 288 F. 520; U. S. v. Duignan, 4 F. (2d) 983. The point of departure between Judge Woodrough's decision and the decisions which have upheld these sections as a valid exercise of legislative power is found in the construction of the statute itself. Judge Hough, in his opinion in the Duignan Case, supra, said:

"The applicable sections of the National Prohibition Law have a long legal history. The legal concept of extending by legislative fiat the definition of a public nuisance to something theretofore legal, and then calling upon equity to abate it, is found in the Kansas statute of 1885, quoted by Harlan, J., in Mugler v. Kansas [8 S. Ct. 273], 123 U. S. 623 [31 L. Ed. 205]."

The extent of the legislative power, of which these sections are merely instances, is to define a public nuisance and to provide for its abatement in a court of equity. Mugler v. Kansas, 8 S. Ct. 273, 123 U. S. 623, 31 L. Ed. 205. By construing these sections as merely an exercise of this well-established legislative power to declare what are public nuisances and to provide for their abatement in a court of equity, the courts have successfully met the claim that such statutes are unconstitutional because they fail to provide for trial by jury. Thus in the Mugler Case the objection was disposed of as follows:

"As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits in equity brought to abate a public nuisance."

The same objection was met in precisely the same way in the Reisenweber and Duignan Cases, supra. There can be no doubt, therefore, that in both of those cases the court construed the statute as merely authorizing the exercise of the powers conferred by the statute or inherently possessed, in order to abate an existing nuisance, using that term in the sense that the nuisance exists so long as there is reasonable likelihood of the recurrence of violations upon the premises in question. Indeed, the statute itself seems to be open to no other construction, providing as it does that "an action to enjoin any nuisance * * * may be brought," etc., and that the action "shall be brought and tried as an action in equity."

[2] The provision that in such an action it shall not be necessary for the court to find that the property involved is being unlawfully used at the time of the hearing is to be regarded simply as a rule of evidence, leaving it open to the court to infer from prior violations the continued existence of the nuisance. Where abatement before entry of decree is conceded as in this case, this rule of evidence can have no application. In U. S. v. Schwartz (D. C.) 1 F.(2d) 718, Judge Anderson said:

"Nor do the rules of evidence in sections 22 and 23, to the effect that a finding of violation at the time of trial shall not be necessary, seem to me to cause difficulty. These provisions do not require the court to find a nuisance, unless the illegal acts may be found continuous or in reasonable probability recurrent—the necessary elements of a nuisance. They simply authorize the court to draw the inference as to recurrence, from a single act of a kind that Congress deemed of rather unusual significance in that regard. Of course, the inference from the single sale may be controlled by other facts indicating an abatement of the nuisance."

[3] In this case, the "inference as to recurrence" is controlled by stipulated facts showing complete abatement prior to the entry of decree, and closure of the premises at this time cannot be justified as an exercise of the power to abate the nuisance. It would indeed be nothing short of the exercise of punitive power by a court of equity in order to punish the commission of a past offense. Such a distortion of equitable remedies is not lightly to be imputed to Congress, even if a desire to put teeth in the statute be assumed. If these sections grant any such power, the conclusion that they are unconstitutional reached by Judge Woodrough in U. S. v. Lot 29, etc., supra, could hardly have been avoided in the Reisenweber and Duignan Cases,

supra. A construction rendering a statute of doubtful constitutionality must always be avoided if it is fairly possible to do so. Panama R. Co. v. Johnson, 44 S. Ct. 391, 264 U. S. 375, 39, 68 L. Ed. 748, U. S. v. Walter, 44 S. Ct. 10, 263 U. S. 15, 68 L. Ed. 137. That the power granted by these sections is purely remedial and in no sense punitive, and therefore is to be exercised solely for the purpose of abating the nuisance, is distinctly held in the following cases: U. S. v. Boynton (D. C.) 297 F. 261, 266; Peter Hand Co. v. U. S. (C. C. A.) 2 F.(2d) 449; U. S. v. Reinking (D. C.) 283 F. 855; Lewinsohn v. U. S. (C. C. A.) 278 F. 421; Kennedy v. U. S. (C. C. A.) 4 F.(2d) 486.

[4] Upon principle and authority, therefore, it must be held in this case that, the nuisance having been completely abated prior to the entry of the decree, there is nothing on which any decree under section 22 can operate. It might well be said that the question has become moot. U. S. v. American-Asiatic S. S. Co., 37 S. Ct. 233, 242 U. S. 537, 61 L. Ed. 479.

There is left for consideration the second cause of action, founded upon section 23, and the government's prayer for a personal injunction against Zeona, the subtenant. Under the provisions of this section, the allegations of the second cause of action warranting this relief being necessarily taken as confessed, because of Zeona's failure to appear, although served with process, the personal injunction prayed for may issue against him. No such relief is sought against the owner, and, by its stipulation with the tenant Brumack, the government has apparently waived its prayer for a personal injunction against him.

Accordingly the complaint must be dismissed as to all of the parties excepting the defendant Zeona, against whom a decree for personal injunction may be taken pro confesso.