UNITED STATES v. BOYNTON et al. (ALLAN et al., Interveners).

(District Court, E. D. Michigan, S. D. March 11, 1924.)

No. 583.

1. **Intoxicating liquors** ⊂⇒21—Congress has power to declare place where liquor is unlawfully sold public nuisance.

The provision of National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj), declaring that any place where intoxicating liquor is kept or sold in violation of the act a public nuisance, is within the power of Congress under Const. Amend. 18.

2. **Intoxicating liquors** ⊂⇒278—Any means reasonably necessary to abate nuisance may be adopted.

Whatever means are reasonably necessary to abate a nuisance, as declared by National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj), even to the extent of taking or destroying the property of an innocent owner, may be adopted, without infringing constitutional rights.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Intoxicating liquors ⊚⇒261—Knowledge of owner not requisite to order closing place as nuisance.**

A finding by the court that the owner had knowledge of the unlawful use of premises adjudged a nuisance is not a condition precedent to an order closing the place for one year.

4. **Intoxicating liquors ⊚⇒278—Order closing place is merely an aid in abatement of nuisance.**

An order closing a place adjudged a nuisance under National Prohibition Act, tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), is not intended as a punishment for past offenses, but merely as a reasonable and effective aid in abatement of the nuisance.

5. **Intoxicating liquors ⊚⇒271—Lessor may intervene in suit to abate nuisance conducted by lessee.**

In a suit under National Prohibition Act, tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), for abatement of a nuisance conducted by a lessee the owner of the premises has such an interest as to entitle him to intervene.

6. **Intoxicating liquors ⊚⇒277—In suit to abate nuisance conducted by tenant intervening owner may obtain affirmative relief by cancellation of lease.**

In a suit under National Prohibition Act, tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), to abate a nuisance conducted by a tenant, the intervening owner of the premises, who was without knowledge of or acquiescence in, their unlawful use, may obtain affirmative relief by a cancellation of the lease under section 23 (section 10138½l), as against a lessee shown to have participated in, or to have had guilty knowledge of, such use by a subtenant.

In Equity. Suit by the United States against George Boynton and others. On petition by Robert M. Allan and others for leave to intervene as defendants and cross-complainants. Granted.

Delos G. Smith, U. S. Atty., of Detroit, Mich.

Percy W. Grose, of Detroit, Mich., for defendants George Boynton and Mary Boynton.

Wicker, Quaine & Groat, of Detroit, Mich., for defendant Van Dall.

Trowbridge, Lewis & Watkins, of Detroit, Mich., for defendant Voigt Land Co.

Stevenson, Carpenter, Butzel & Backus, of Detroit, Mich., for defendant and cross-plaintiff Allan and intervening defendants and cross-plaintiffs Allan, Security Trust Company, and Malcolmson.

TUTTLE, District Judge. This suit in equity is now pending on a bill of complaint filed by the United States to enjoin and abate an alleged public nuisance under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), on answers filed by certain defendants herein, and on a petition filed by certain persons (hereinafter called the interveners) asking that they be permitted to intervene as defendants and as cross-plaintiffs for the purpose of seeking affirmative relief against other defendants.

The statutory provisions involved are sections 21. 22, and 23 of title 2 of the National Prohibition Act (Act Oct. 28, 1919, c. 85, 41 Statutes at Large, 314 [Comp. St. Ann. Supp. 1923, §§ 10138½jj, 10138½k, 10138½l]). Section 21 provides in part as follows:

"Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this

title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be" punished as provided in said section.

Section 22 is as follows:

"An action to enjoin any nuisance defined in this title may be brought in the name of the United States by the Attorney General of the United States or by any United States attorney or any prosecuting attorney of any State or any subdivision thereof or by the commissioner or his deputies or assistants. Such action shall be brought and tried as an action in equity and may be brought in any court having jurisdiction to hear and determine equity cases. If it is made to appear by affidavits or otherwise, to the satisfaction of the court, or judge in vacation, that such nuisance exists, a temporary writ of injunction shall forthwith issue restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the liquor or fixtures, or other things used in connection with the violation of this Act constituting such nuisance. No bond shall be required in instituting such proceedings. It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored in such room, house, building, boat, vehicle, structure, or place, or any part thereof. And upon judgment of the court ordering such nuisance to be abated, the court may order that the room, house, building, structure, boat, vehicle, or place shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety, to be approved by the court making the order, in the penal and liquidated sum of not less than $500 nor more than $1,000, payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this title upon said property."

Section 23, in so far as it is here involved, provides that:

"Any violation of this title upon any leased premises by the 'lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease."

The bill of complaint alleges that it is filed in the name of the United States, by the United States attorney for this district, pursuant to section 22 of title 2 of the National Prohibition Act, for the purpose of enjoining and abating a certain nuisance as defined in section 21 of said title, alleged to be existing upon certain premises consisting of an "alleged soft drink parlor," located in a certain specifically described building in the city of Detroit, in said district; that defendants George and Mary Boynton own the fee title to said premises; that the defendants Allan and Security Trust Company, trustee, are the lessees of the said premises under a 99-year lease from said first-mentioned defendants; that defendants Voigt Land Company and Detroit Beverage Company also hold leasehold interests in said premises, the terms of which are unknown to plaintiff; that defendant Van Dall is the proprietor of said alleged soft drink parlor, and occupies said premises as a tenant of said defendant Voigt Land Company; that said premises are used and maintained as a place where intoxicating liquors, as defined in said Na-

tional Prohibition Act, are habitually, continually, and recurrently sold, kept, and bartered for beverage purposes in violation of said Act by the defendants mentioned; and that unless restrained by the injunction of this court the said defendants will continue to maintain and use said premises as a place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of said National Prohibition Act, and as a common and public nuisance as defined in said act. The bill prays that each of the defendants be directed to answer the bill; that all of said defendants be perpetually enjoined from using, maintaining, and assisting in using and maintaining said premises as a place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of the National Prohibition Act; that process be issued by this court to the United States marshal, commanding him to abate such public and common nuisance, and for that purpose to take possession of said premises, and to close the same, and to take possession of all the said fixtures and other property now used on said premises in connection with the violation constituting said nuisance, and to remove the same to a place of safe-keeping to abide the further order of this court; and that a decree be entered by this court directing that no intoxicating liquor shall be manufactured, sold, bartered, or kept on said premises, and that "said premises shall not be occupied or used for one year after the date of said decree."

Defendant Van Dall has filed an answer, in which he admits that he is the proprietor of a soft drink parlor located at the premises in question, but denies that any nuisance exists upon said premises. He also denies that plaintiff is entitled to any relief in a court of equity, as it has a complete and adequate remedy at law for any violation of the provisions of the National Prohibition Act.

Defendant Voigt Land Company has filed an answer in which it avers that it is lessee of said premises under lease (hereinafter referred to as a 15-year lease) from defendant Mary Boynton, dated February 5, 1912, and expiring May 1, 1927; that it has leased said premises to the defendant Detroit Beverage Company by a lease dated March 30, 1912, and expiring April 30, 1927; that said Detroit Beverage Company leased said premises to defendant Van Dall, who occupies it as a soft drink parlor as a subtenant under said defendant Detroit Beverage Company; that after making said 15-year lease to it (the Voigt Land Company), its lessor (said defendant Boynton) leased said premises to the predecessor in title of the interveners by a 99-year lease, dated December 20, 1922, subject to the rights of said defendant Voigt Land Company (and of its sublessees and assigns) under its said 15-year lease; that it has no knowledge concerning the alleged nuisance referred to in said bill of complaint, and that neither it nor its subtenant, said Detroit Beverage Company, has knowingly done or suffered any other person to do any unlawful act upon said premises, but that they desire to co-operate with the government in abating any nuisance which may exist thereon; and that said Detroit Beverage Company (subtenant under said Voigt Land Company) proposes to promptly exercise its election to terminate the leasehold rights of defendant Van Dall, if the acts charged in the bill of complaint are found by this

court to be true, so that the rights of all persons interested may be properly protected.

The interveners, in their intervening petition already mentioned (which is also in the nature of an answer and cross-complaint), allege that they are the owners of the aforesaid 99-year lease; that at the time of the making of said lease said premises were subject to the aforesaid 15-year lease from defendants Boynton to defendant Voigt Land Company; that by reason of the covenants and conditions of the said 99-year lease and by operation of law the interveners have become the landlords of said premises, and the defendant Voigt Land Company their tenant, paying them rent as such; that by reason of the terms and conditions of said 99-year lease said interveners have succeeded to all the right, title, and interest of defendants Boynton in said 15-year lease to defendant Voigt Land Company; that defendant Van Dall is in possession of said premises as a subtenant or occupant under defendant Voigt Land Company, the true legal character of such possession being unknown to them; that interveners are law-abiding citizens, and believe in the strict enforcement of the federal Prohibition Act, and that they at all times have been and are willing and anxious to co-operate with the government officials and courts for the purpose of effectually abating any nuisance (if any there has been or is) upon the premises; that they have not themselves wittingly or willfully done or suffered others to do any unlawful act upon said premises, and will not do so in the future; that when they received information to the effect that intoxicating liquor had been unlawfully sold on said premises they took steps to terminate the leasehold rights of said defendant Voigt Land Company and of those claiming through or under it, notices of forfeiture being served upon defendants Voigt Land Company, Detroit Beverage Company, and Van Dall; that it appears probable that the National Prohibition Act has been violated on said premises by tenants or agents of said Voigt Land Company, and that, if it be so found by this court, interveners desire to reaffirm said notices of forfeiture and to declare said 15-year lease to the Voigt Land Company forfeited, and demand immediate possession of said premises, and they pray that the court will permit them to intervene and have their answer considered and treated as a cross-bill against defendants Voigt Land Company, Detroit Beverage Company, and Van Dall; and that, if upon the hearing in this cause the court shall find that the National Prohibition Act has been violated on said premises by said Voigt Land Company or by any occupant of the premises responsible to it, this court will cancel and declare forfeited all leases by, through, or under which any of said defendants claim any rights in such premises, and that the interveners be placed in immediate possession of said premises, free from all rights and claims of said defendants; and for general relief. Interveners allege that they are ready and willing to furnish a bond in such form and amount and with such sureties as this court shall direct, conditioned that the next tenant of such premises shall observe the law and conduct a lawful and orderly business there and otherwise conditioned according to law.

The bill has been dismissed as to defendants Boynton, the owners of

the fee, on their motion and a showing that their interests are so remote that they have no control over the premises or interest in these proceedings. A temporary injunction has been granted against defendant Van Dall as prayed in the bill.

Are the interveners entitled to the relief prayed by them? It is said on behalf of the interveners three questions are involved as follows: (1) Should the intervention sought be permitted? (2) Is it proper practice for the interveners to file a cross-complaint against the other defendants? (3) If such practice is proper, can such affirmative relief be granted in the present case?

[1] 1. If the owners of the 99-year lease of the premises in question will be affected by the decree sought by the plaintiff herein, they are proper parties to the cause. Are their rights as such owners of an interest in these premises involved in this suit? It does not appear to be claimed by any one that the interveners had any knowledge or notice concerning the unlawful use to which such premises are alleged to have been put, and no relief in personam seems to be sought against them. It will, however, be noted that a decree is sought directing "that said premises shall not be occupied or used for one year after the date of said decree." Is plaintiff entitled to such a decree, in the absence of any allegation or proof that the owners of such premises participated in, or had knowledge or notice of, the unlawful acts constituting the nuisance complained of?   \

It cannot be doubted that Congress may constitutionally declare that a place occupied and used for the unlawful sale of intoxicating liquor is a public nuisance, and that the effect of such a declaration is to make such a place a nuisance, subject to abatement as such by courts of equity. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Remus v. United States, 291 Fed. 513 (C. C. A. 6); United States v. Reisenweber, 288 Fed. 520 (C. C. A. 2); United States v. Reinking (D. C.) 283 Fed. 855; United States v. Cohen (D. C.) 268 Fed. 420.

[2] It must also be regarded as settled law that whatever means are reasonably necessary to abate such a nuisance, even to the extent of taking or destroying the property of an innocent owner, may be adopted without infringing any constitutional rights. Mugler v. Kansas, supra; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; Northwestern Laundry Co. v. Des Moines, 239 U. S. 486, 36 Sup. Ct. 206, 60 L. Ed. 396; State v. Emerson, 90 Wash. 565, 155 Pac. 579, L. R. A. 1916F, 325; Sings v. Joliet, 237 Ill. 300, 86 N. E. 663, 22 L. R. A. (N. S.) 1128, 127 Am. St. Rep 323; Polsgrove v. Moss, 154 Ky. 408, 157 S. W. 1133. This power is in some respects analogous to the constitutional power of Congress to forfeit, even as against a wholly innocent owner, property used for the commission of crime. Dobbins v. United States, 96 U. S. 395, 24 L. Ed. 637; J. W. Goldsmith, Jr.-Grant Co., 254 U. S. 505, 41 Sup. Ct. 189, 65 L. Ed. 376.

[3] In the exercise of its authority, and in compliance with the duty imposed upon it by the Eighteenth Amendment, to enforce such amendment "by appropriate legislation," Congress has declared that any place where intoxicating liquor is unlawfully manufactured, sold, kept,

or bartered is a public nuisance, and has made suitable provisions for the abatement of such a nuisance in proper legal proceedings. One of the means adopted by Congress as advisable and appropriate for the accomplishment of that object is permissive authority in a proper court of equity to order that the place of location of the offending nuisance "shall not be occupied or used for one year thereafter," unless such court, in its discretion, shall permit such place to be occupied or used "if the owner, lessee, tenant, or occupant thereof shall give bond" as prescribed in the statute already quoted. This power to "padlock" a place which has thus become a public nuisance is not made dependent upon a finding of knowledge or notice, on the part of any owner of such a place, of the existence of such nuisance. (Whether Congress could have limited the exercise by a court of equity of its inherent power to enforce its orders in the abatement of a nuisance, is a question which need not be considered.) But the power is expressly granted by Congress to the court in very broad terms. The only conditions attempted to be, attached to its exercise are a finding that the nuisance exists and a judgment "ordering such nuisance to be abated." The language of the statute is plain and unambiguous in this respect, and this court cannot read into such language a condition or qualification not there expressed, such as a finding of guilty knowledge on the part of an owner of affected premises. To restrict this broadly granted power of abatement by adding such a condition, not prescribed by Congress, would be to indulge in judicial legislation, beyond the jurisdiction of this court.

[4] Obviously the permitted closing of a place which has been used for the maintenance of a nuisance, as part of the provided procedure for the abatement of such nuisance, was not intended as a punishment nor penalty for previous fault, but merely as a helpful and reasonable aid in abating the nuisance. It is clear that such a remedy, accompanied and safeguarded as it is by the discretionary power in the court to apply and adapt it to the circumstances of each particular case, is both effective and just. It is a matter of common knowledge, of which this court will take judicial notice, that the existence of a nuisance of this kind involves, not only the presence of intoxicating liquor, but also the habitual presence of those who come to the premises to sell and to purchase such liquor, and who necessarily assist, and participate in, the continued maintenance of such nuisance. The usual, if not inevitable, result is that the place acquires that "probability that the old customers will resort to the old place," which the law recognizes, in connection with a lawful business, as "good will." The good will of a reputable business is valued throughout the business world. Purchasers pay thousands of dollars for this element of a legitimate business, knowing that the habits of customers in patronizing a particular institution become so fixed as to greatly enhance its value. So, when a place becomes a public nuisance because intoxicating liquor is there purchased, kept, and sold for beverage purposes, it establishes a reputation and acquires customers who will continue to frequent that location. This naturally and necessarily renders it unusually difficult to prevent further violations of the law in that place, with consequent continuation

of the nuisance. It is not to be expected that an owner of premises who has already failed to prevent its use as a public nuisance will be more successful in that respect in the future, notwithstanding the entire innocence and good faith of such owner. It often happens, as is perhaps true in the present case, that an owner or lessor of premises on which such a nuisance has been created (by the occupant thereof) is not personally responsible for that situation and has not contributed to, nor even had knowledge of, the acts constituting the nuisance. So that under those circumstances, and specifically in the present case, the closing of the premises is not to be considered as a reflection, in any way, upon such owner or lessor. It is not prompted by fault nor designed as punishment, but its sole purpose is to accomplish an effectual abatement of the nuisance. As already indicated, I cannot doubt that such action is a reasonable and appropriate, if not absolutely necessary, means of enforcing the constitutional power to abate a public nuisance.

[5] It follows that the interveners have such an interest in the outcome of this suit that they should be permitted to become parties thereto.

[6] 2. Is it proper practice for the interveners to file a cross-complaint for affirmative relief against other defendants? As already noted, the National Prohibition Act, in section 23 of title 2, provides that:

"Any violation of this title upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease."

It is also there provided that an action to enjoin a nuisance under the statute "shall be brought and tried as an action in equity." It is settled equity practice to permit a defendant in a suit to seek relief against another defendant in such suit with respect to a matter germane to the subject thereof. The practice is recognized in general equity rule 30, providing that:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject matter of the suit."

In the present case the very facts relied on by the plaintiff in support of the decree sought by it might also entitle the interveners to the relief prayed by them. The situation renders the right to set up the cross-complaint in question peculiarly applicable and appropriate. Grossman v. United States, 280 Fed. 683 (C. C. A. 7).

Such practice enables the government and the innocent lessor of premises used as a nuisance under the National Prohibition Act to cooperate to the advantage of both. In the one suit, the existence of the nuisance (if any) may be proved, the good faith of the lessor established, the nuisance which offends both the government and such lessor abated (by the closing of the premises for a sufficient period to accomplish that result), the lease which has enabled the tenant to commit such nuisance may be terminated, such tenant removed, and the premises restored to the possession and control of such lessor, subject to his giving the bond prescribed by the National Prohibition Act. It may not be amiss to state in this connection that the present policy of this court in this re-

spect is not to permit the opening of premises so closed prior to the expiration of the statutory period, unless the court is first satisfied that such premises will not be used for the purpose of selling soft drinks, and will not be occupied by any person who is not a citizen of the United States, or who has been convicted of any felony or misdemeanor under the laws of any city, state, or country within the preceding five years.

3. Can the relief prayed by the interveners be granted in the present suit? It is urged by the interveners that this question cannot and should not be determined by this court until all of the evidence has been presented, although they insist that such evidence will warrant a finding by this court, not only of the existence of the nuisance alleged, but also of knowledge thereof on the part of defendants Voigt Land Company (lessee under the interveners), Detroit Beverage Company (subtenant under said Voigt Land Company), and Van Dall (subtenant under said Detroit Beverage Company). Clearly, only a lessor who has not acquiesced in the maintenance of a nuisance may complain of such nuisance as a ground for forfeiture of the lease. If, however, the interveners have succeeded to the position of the owners of the fee as the lessors and landlords of the premises as to a lessee thereof chargeable with guilty knowledge of the existence of the alleged nuisance, they have the right, unless and until it be waived, to terminate any such lease held by such a lessee and to have such right enforced by cross-complaint in this suit. At the present stage of the proceedings, the question as to what lease, if any, should be declared forfeited is not properly before the court, and therefore no opinion is expressed thereon.

The petition for leave to intervene as defendants and cross-plaintiffs should be granted, without prejudice to any rights of any party hereto not disposed of by the conclusions hereinbefore expressed. An order will be entered making the interveners parties to this suit as defendants to the bill of complaint, and as cross-plaintiffs as against the other defendants herein, as prayed, and the cause will proceed in accordance with the practice applicable.