UNITED STATES v. STUDIO CLUB et al.*

(District Court, S. D. New York. March 9, 1926.)

1. Intoxicating liquors ⟺278—Law authorizing abatement of liquor nuisance is solely for abating existing nuisance, and decree should be addressed to rights existing, not at time suit began, but at time of its determination (National Prohibition Act, tit. 2, §§ 22, 23 [Comp. St. Ann. Supp. 1923, §§ 10138½k, 10138½l]).

National Prohibition Act, tit. 2, §§ 22, 23 (Comp. St. Ann. Supp. 1923, §§ 10138½k, 10138¼l), should be construed as authorizing exercise of power solely for abating existing nuisance, and decree should always be addressed to rights existing, not at time suit began, but at time of its determination.

2. Intoxicating liquors ⟺265.

Owner's knowledge or reason to believe that tenant was violating law on premises is not necessary to exercise of court's power to abate liquor nuisance.

3. Intoxicating liquors ⟺265—Decree of closure may be entered where landlord, although having no knowledge that tenant was violating law, had reason to suspect such, and had taken no steps to obtain evidence to terminate lease, and particularly where business was of character that would probably result in continuous violation on premises.

Where owner, although having no knowledge of tenant's conducting liquor nuisance on premises, had received complaints, and had taken no steps to obtain evidence sufficient to warrant termination of lease, and had ample reason to suspect that tenant's business was not being conducted in accordance with law, decree of closure will be entered, particularly where business was of such character as would probably result in continuous violation.

In Equity. Suit by the United States against the Studio Club to abate a liquor nuisance, wherein Vincent C. Pepe intervenes. Decree providing for a closure entered.

Suit in equity under sections 22 and 23 of title 2 of the National Prohibition Act

*Decree modified in 12 F.(2d) 985.

(Comp. St. Ann. Supp. 1923, §§ 10138½k, 10138½l) to abate liquor nuisance. The premises complained of comprise a cabaret, restaurant, and kitchen in the basement and part of the ground floor of the building on the corner of Washington Square South and McDougall street; the kitchen being located in the rear portion of the ground floor and the cabaret restaurant in the basement. The front portions of the ground floor are occupied by the owner of the premises, Vincent C. Pepe, as an office for the conduct of a real estate business.

In 1922 Pepe leased the basement and portions of the ground floor used for the kitchen to one Barney Gallant for resturant purposes for a term of 9 years and 10 months from the 1st day of August, 1922. Thereafter this lease was assigned with the owner's consent to the Club Gallant, Inc. While the premises were in the possession of this corporation and being operated as a restaurant, cabaret, and dance hall, suit was commenced in this court by the United States attorney to abate a nuisance alleged to exist thereon in violation of the National Prohibition Law. This suit resulted in a consent decree closing the premises for a term of one year, and in accordance therewith the premises were closed, and kept closed during said term. Thereafter, and in September, 1925, upon payment of the rent which had accrued under the lease, the tenant, Club Gallant, Inc., now known as the Concord Restaurant Company, Inc., again took possession of the premises, and conducted a restaurant, cabaret, and dance hall thereon, known as the Studio Club. The present suit is based upon violations on said premises occurring in December, 1925.

The testimony with respect to these violations shows that liquor was being served quite freely to those whom the persons in charge of the business considered safe. On both occasions there was evidence, not only of selling, but of intoxication on the part of some of the patrons present. The owner, who testified frankly, stated that he had received complaints from the police as to the character of the premises, but claimed that he had never been in a position to terminate the lease until January 13 of this year, when he was informed by the assistant district attorney in charge of this suit that the place was used and maintained for the sale of intoxicating liquor in violation of the National Prohibition Act.

It is conceded that the owner thereupon terminated the lease, such termination becoming effective on the 24th day of January, 1926. It further appears that the fittings and fixtures used in connection with the restaurant and kitchen were thereafter removed from the premises by the tenant, and that the premises still remain vacant. The case was tried upon the owner's bill of intervention, and the government's denial of the allegations thereof contained in the tenth, fourteenth, and fifteenth paragraphs.

The issues of fact thus raised for determination are, first, whether the owner was a party or privy to the violations, or had knowledge thereof, or reason to believe the same to have been committed; and, second, whether the nuisances complained of have been actually abated and ended before the entry of decree.

Emory R. Buckner, U. S. Atty., of New York City (J. Edward Lumbard, Jr., of New York City, of counsel), for the United States.

John D. Lindsay, of New York City, for intervener Pepe.

THACHER, District Judge (after stating the facts as above). [1] There can be no doubt that the statute is to be construed as authorizing the exercise of power, conferred by statute or inherently possessed, solely for the purpose of abating an existing nuisance. U. S. v. Chesebrough Manufacturing Co., 11 F.(2d) 537. The decree is always to be addressed to the rights existing, not at the moment of suit begun, but at the time of its determination. U. S. v. Gaffney et al., 10 F. (2d) 694. If, therefore, the nuisance has ceased to exist, in the sense that there is no reasonable likelihood of its recurrence, dismissal of the suit would necessarily follow. U. S. v. Chesebrough Mfg. Co. et al., supra. As stated by Judge Hough in the Gaffney Case, the suit in a certain sense is "against the nuisance." If there be no nuisance, there can be no decree abating it.

The question, therefore, is whether, upon the facts disclosed by this record, there is a reasonable likelihood of a recurrence of the unlawful use of the premises in question. U. S. v. Margolis (D. C.) 289 F. 161. In determining this question it is important to consider the character of the premises and of the violations which have occurred there. We are here dealing with a cabaret, restaurant, and dance hall, the ordinary "night club" which has become so prevalent under prohibition. Its business, disclosed by the evidence, was of such a character as to furnish great temptation, if not economic necessity, for continuous violation of law. Judge Tuttle, in U. S.

v. Boynton (D. C.) 297 F. 261, 267, speaking of such premises, said:

"It is a matter of common knowledge, of which this court will take judicial notice, that the existence of a nuisance of this kind involves, not only the presence of intoxicating liquor, but also the habitual presence of those who come to the premises to sell and to purchase such liquor, and who necessarily assist, and participate in, the continued maintenance of such nuisance. The usual, if not inevitable, result is that the place acquires that 'probability that the old customers will resort to the old place,' which the law recognizes, in connection with a lawful business, as 'good will.' The good will of a reputable business is valued throughout the business world. Purchasers pay thousands of dollars for this element of a legitimate business, knowing that the habits of customers in patronizing a particular institution become so fixed as to greatly enhance its value. So, when a place becomes a public nuisance because intoxicating liquor is there purchased, kept, and sold for beverage purposes, it establishes a reputation and acquires customers who will continue to frequent that location. This naturally and necessarily renders it unusually difficult to prevent further violations of the law in that place, with consequent continuation of the nuisance. It is not to be expected that an owner of premises who has already failed to prevent its use as a public nuisance will be more successful in that respect in the future, notwithstanding the entire innocence and good faith of such owner. It often happens, as is perhaps true in the present case, that an owner or lessor of premises on which such a nuisance has been created (by the occupant thereof) is not personally responsible for that situation and has not contributed to, nor even had knowledge of, the acts constituting the nuisance. So that under those circumstances, and specifically in the present case, the closing of the premises is not to be considered as a reflection, in any way, upon such owner or lessor. It is not prompted by fault nor designed as punishment, but its sole purpose is to accomplish an effectual abatement of the nuisance."

[2, 3] The evidence here demonstrates the truth of what Judge Tuttle says, for here it appears that these same premises have already been declared a nuisance and closed for a period of one year, and that notwithstanding this decree tenant, upon resuming possession, continued the nuisance. Apparently old patrons frequented the old place, and were not disappointed in their hopes or expectations in so doing. In U. S. v. Boynton, supra, it was held that the owner's knowledge or reason to believe that the occupant of his premises was violating the law thereon was not necessary to the exercise of the court's power to abate the nuisance. The decision in U. S. v. Schwartz (D. C.) 1 F.(2d) 718, is to the contrary. The question was expressly reserved by Judge Hough in his opinion in the Gaffney Case, supra.

Viewing the statute as one not intended in any sense to punish personal guilt, but solely to prevent the continuance or recurrence of a public nuisance, I am constrained to follow the decision of Judge Tuttle in the Boynton Case, but may add that in this case the owner had ample reason to suspect that the tenant's business was not being conducted in accordance with law. Upon his own admission, he received numerous complaints against the premises. While he was energetic in requesting the complainants to furnish him with evidence of violations upon the premises, he took no steps to obtain independently evidence sufficient to warrant a termination of the lease. To this extent I think the evidence clear. At the same time, I am satisfied that the owner, except as landlord, had no interest whatever in the tenant's business, and had no personal knowledge of what was done in violation of law upon the premises. No weight has been attached to the testimony in regard to the finding of a pint of whisky in the year 1923 by officers who claimed to have entered under a search warrant, and all the testimony regarding this incident has been disregarded.

As directed upon the trial, the decree to be entered herein may provide for a closure for six months from January 24, with a provision, however, at the foot thereof, that such decree may be vacated upon showing to the satisfaction of the court that by reason of any contemplated use of the premises there is no reasonable likelihood of the recurrence of violations of the National Prohibition Act upon the premises in question.