## UNITED STATES v. KELLY.

District Court, D. Idaho, S. D. December 31, 1927.

No. 1339.

1. Intoxicating liquors ⬉261—Operator of restaurant, permitting patrons to consume liquor, becomes liable in having premises abated as nuisance (National Prohibition Act, tit. 2, §§ 21, 22 [27 USCA §§ 33, 34]).

Person in charge of and operating restaurant, who is not vigilant in requiring employees or himself to remove from premises those bringing and consuming liquor, and furnishing them with tables, glasses, ginger ale, and cracked ice, thereby aids and participates in maintenance of nuisance, and becomes liable, under National Prohibition Act, tit. 2, §§ 21, 22 (27 USCA §§ 33, 34), in having the same abated.

2. Intoxicating liquors ⬉263—Stipulated facts held to justify permitting alleged nuisance to remain open on filing bond (National Prohibition Act, tit. 2, § 22 [27 USCA § 34]).

Stipulated facts in suit in equity, under National Prohibition Act, tit. 2, § 22 (27 USCA § 34), for abatement of alleged public nuisance, held to justify exercise of discretion in manner provided by statute, whereby use of premises may be authorized on filing sufficient bond.

3. Intoxicating liquors ⬉276—Court must apply remedy, under law authorizing abatement of nuisance, according to circumstances of particular case (National Prohibition Act, tit. 2, §§ 21, 22 [27 USCA §§ 33, 34]).

Courts, in applying remedy under National Prohibition Act, tit. 2, §§ 21, 22 (27 USCA §§ 33, 34), as to abatement of nuisance, and permitting premises to remain open on filing bond, must do so according to the circumstances of each particular case.

In Equity. Suit by the United States against James Kelly. Decree in accordance with opinion.

H. E. Ray, U. S. Dist. Atty., of Boise, Idaho.

Oppenheim & Lampert and Edwin Snow, all of Boise, Idaho, for defendant.

CAVANAH, District Judge. The United States brings this suit in equity to abate an alleged and admitted public nuisance existing upon the premises occupied and used by the defendant as a tenant, and commonly

known as the "Kelly Club Café," located in the business center of the city, under section 22, title 2, of the National Prohibition Act (27 USCA § 34). The bill was filed by the government on November 1, 1927, in which it is charged that the defendant was and has been maintaining the premises as a place where intoxicating liquor, as defined by the National Prohibition Act, is manufactured, sold, bartered, and kept in violation of the act. Affidavits of two prohibition agents are attached to and made a part of the bill.

In the affidavit of Agent Paris it is recited that he has been for some time personally acquainted with the defendant, who has been operating and in charge of the café; that during the past year, on various occasions, he observed in the café patrons in an intoxicated condition, and some of them, while intoxicated, indulged in dancing, from 9 o'clock p. m. to 1 o'clock a. m., and particularly during the months of February and March, 1927, while the dancing was going on, these patrons conducted themselves so riotously that he called it to the attention of the defendant. At that time he saw being delivered by the employees of defendant, to and on the tables, ginger ale, ginger ale bottles, cracked ice, and extra glasses, for the use of patrons, and that, while so drinking, they were in an intoxicated condition. About the hour of 11:45 p. m., on October 11, 1927, he was again in the café and observed a number of patrons dancing in an intoxicated condition, and at that time he saw the defendant go up onto the balcony, where the orchestra was furnishing music, and talk to different patrons, being men and women, who were in private dining rooms or booths, and at that time, in the presence of the defendant, a gallon jug, which contained liquor, was passed around. On that early morning he further observed some of the patrons leave the small dining rooms, and come down onto the main or lower floor, and participate in dancing while intoxicated, at which time he requested the defendant to help him clean out the drunken condition upstairs in the balcony, and, when arriving there, they found whisky, water, and ice spilled on the floor and on the table, and drinking glasses, filled with ginger ale and cracked ice, and empty ginger ale bottles were scattered about, and on the floor sat a gallon glass jug, uncorked, containing about one-third full of moonshine whisky. He saw one of the waitresses working there serve the patrons with drinking glasses, cracked ice, and ginger ale. Further he states that at that time defendant informed him that he did not know who brought the whisky there, but did know that the patrons who were using the dancing room were all drunk, as one of the girls in the party had attempted to jump from the balcony down onto the main or dance floor.

In the affidavit of Agent McGinnis it is stated that on the evening of October 29, 1927, about the hour of 11:30 p. m., he entered the café and saw there various patrons dancing, sitting at tables around the dance floor space, and some, who were intoxicated, going and coming to and from the balcony. At that time he saw patrons seated at tables upon which were ginger ale bottles and extra glasses filled with cracked ice. He, on another occasion, about midnight of October 21, 1927, found the physical condition there the same, and observed dancing there as on his former visit.

Upon application of the district attorney, based on the verified bill and these two affidavits, a temporary injunction was issued, restraining the defendant from selling, possessing, bartering, or keeping intoxicating liquor on the premises, pending final hearing and determination of the cause. The defendant answered the bill, and attached thereto an affidavit, in which he denies most of the material allegations of the bill and the affidavits of Agent Paris. The cause being at issue, it was then submitted to the court upon an agreed stipulation of facts, signed by the district attorney, representing the government, and counsel for the defendant, which contains all of the facts and is the record upon which the court's conclusions must be based.

It is there stated that, if witnesses in the case are called and give oral testimony, it will disclose the following: That for more than nine years last past there has been conducted on the premises in question, which are located in the very center of the business section of the city, a large general restaurant business, which is neither a roadhouse nor a night club, nor a place extensively devoted to evening entertainment; that the hours during which the business is open are between 6 o'clock a. m. and 1 o'clock a. m.; and that the regular business consists of serving breakfast, lunch, dinner, and other meals, at customary meal hours and other times, to from 500 to 1,000 people daily, and on special occasions to from 1,500 to 2,500 people daily. As a usual and customary practice, an orchestra is not used, and there is little business or patronage during evening hours. Occasionally, at certain intervals, such as during the session of the Legislature, or the Intermountain Fair and other occasions,

where an unusual number of out of town visitors are in the city, an orchestra is employed during the dinner hours and evenings, at which time dancing is indulged in by patrons. In February and March, 1927, the state Legislature was in session, and on October 12, 1927, the Intermountain Fair was held.

The defendant's patrons are, with very rare exceptions, law-abiding people and citizens of strict sobriety, including among them men and women of the highest prominence in the business, social, and church circles of the community. That at the times mentioned in the bill there was intoxicating liquor on the premises, which was brought there by patrons of the place without defendant's knowledge, and consumed by them. Ginger ale and cracked ice were served by the defendant, at the regular price sold at other places of similar type and drug stores, to patrons and others, when wanted by them, and was used in the consumption of liquor. Liquor was not kept, possessed, sold, bartered, or other commercial use made thereof on the premises by the defendant personally, or by any of his agents or employees, except such keeping and possessing as may in legal contemplation arise from the facts pleaded and set forth in the agreed statement.

On the night of October 11, 1927, there appears to have been a street carnival in the city near the defendant's place of business, and at that time there were continuously between 300 and 500 people in the restaurant from 8 o'clock p. m. until 1 o'clock a. m. of the 12th, and on the 12th, from 9 o'clock p. m. until 12:15 a. m. of the 13th. On that occasion one of the rooms on the balcony of the restaurant was, by previous engagement, occupied by a party of 14 people, who had served to them a specially prepared dinner, and who, between courses and after the orchestra began playing at 10 o'clock p. m., participated in dancing on the main floor. At that time there was a quantity of liquor brought there by one of the party, without the knowledge of the defendant or his employees, which was partially consumed by them, and the defendant supplied ginger ale and cracked ice upon their order, and which was used in connection with the consumption of liquor. This liquor was found and removed by Federal Prohibition Agent Paris.

During the past six months the defendant has not observed to exceed six times patrons consuming, with meals, intoxicating liquor which was brought there by them. It further appears that at various intervals people showing signs of intoxication entered his place of business, bringing with them concealed liquor, and not to exceed six times during the last two years the defendant has been compelled, by reason of patrons being intoxicated, to cause them to leave the premises, and he refused to serve them further.

The stipulation continues by providing that, in view of the evidence contained therein, the court may enter its decree, ordering that no intoxicating liquor shall be manufactured, sold, bartered, possessed, or kept on the premises, and that the defendant may occupy and use the same for his restaurant business upon furnishing a bond not to exceed the penal sum of $1,000, conditioned that the National Prohibition Act (27 USCA) will not be violated in the future.

[1-3] It will be observed that, under the stipulation of facts, there is but one question for decision, namely: Should the court exercise its discretion, provided for in the statute, permitting the defendant to continue the use and occupancy of the premises upon the giving of a bond? The statutory provisions involved are sections 21 and 22 of title 2 of the National Prohibition Act (sections 33, 34). By section 21 any place, as therein named, where intoxicating liquor is manufactured, sold, kept, or bartered in violation of the statute, is declared to be a public and common nuisance. Then follows section 22, under which this action is brought, authorizing a suit in equity for an injunction against the nuisance, and in which it is provided that, should the court find that a nuisance existed, a decree should be entered, ordering that the place "shall not be occupied or used for one year thereafter," unless the court, in its discretion, shall permit such place to be occupied or used, "if the owner, lessee, tenant, or occupant thereof shall give bond" as provided in the statute.

The power granted by the terms of the act is very broad, and the only conditions attached to its existence are a finding that the nuisance exists and entering of a decree "ordering such nuisance to be abated." Its language is plain in this respect. A place which has been a public nuisance under the statute, and is subject to an order closing it, is not made dependent upon a finding of actual knowledge or notice upon the part of any owner or occupant of the existence of such nuisance. The existence of the conditions is the test, and it involves, not only the presence of intoxicating liquor, but also the habitual presence of those who come to the premises and sell, or purchase, or keep, or use such liquor upon the premises, and are permitted

to bring it, and remain there and consume it, with the permission or aid of the occupant, to such an extent that the acts and conduct of the patron occurs on more than a single occasion. When one in charge of and operating a restaurant, as the defendant is doing, is not vigilant in requiring his employees, or himself, to remove from the premises those who may bring liquor and consume it, and the defendant furnishes them with tables, glasses, ginger ale, and cracked ice for use in consuming it, in his place of business on various occasions, he thereby aids and participates in the maintenance of such nuisance, and becomes liable under the statute in having the same abated.

As has been said, the existence of a nuisance upon the premises has been conceded in the stipulation of facts, and by counsel for the parties on the oral argument. It remains, therefore, only to decide whether or not the facts, as disclosed by the stipulation, are such as justify a finding in ordering the closing of the restaurant for one year, or permitting the occupant to continue the business upon the condition of giving a bond. Had the agreed statement of facts disclosed clearly the conditions existing upon these premises, and the conduct of the defendant as set forth in the affidavits of Paris and Mc-Ginnis, attached to and made a part of the pleadings, I would have had no hesitancy in decreeing that the place be closed and not used for one year. But an analysis of the stipulation of facts, by which I am bound to base my conclusion, presents a situation far from showing that the patrons did conduct themselves on numerous occasions in a drunken and riotous manner at the times when they were there consuming liquor, or that the defendant's attention had been before called by the officers to the continuous use of liquor in the restaurant.

So, upon the facts as appear in the stipulation, I feel that this case is one in which the decree should not order the restaurant business of the defendant to be closed, as the stipulation of facts will only justify requiring the defendant to furnish a bond to continue its use in the manner provided by statute. The procedure permitting the closing of the place, or requiring the giving of a bond to continue the use of the premises, which has been used for the maintenance of a nuisance, under the statute, was not intended as a punishment, but merely as an aid in abating the nuisance. Congress, in saying that a discretion is granted to the court to permit the continued use of premises upon which a nuisance existed, undoubtedly intended that, where facts appear, as are in this record, such discretion should be exercised, and the remedy requiring the giving of a bond would be effective and just. We must apply the remedy provided in the statute to the circumstances of each particular case. Murphy v. U. S., 272 U. S. 630, 47 S. Ct. 218, 71 L. Ed. 446.

A decree may be entered, permitting the defendant to continue the use of the premises, upon the condition of giving a bond in the penal sum of $1,000, and to contain the condition that a violation of the decree or the requirements of the statute will cause a forfeiture of the bond and the closing of the premises.