**UNITED STATES v. BARNES et al.**

No. 823.

District Court, D. Delaware.

Aug. 7, 1931.

Leonard E. Wales, U. S. Atty., of Wilmington, Del., for plaintiff.

C. Edward Duffy (of Hastings, Stockly & Duffy), of Wilmington, Del., for defendants King and Hess.

NIELDS, District Judge.

The United States has filed its bill of complaint against Samuel Barnes, as proprietor of a business carried on at certain premises, known as the Athens Hotel, at the southwest corner of Fifth and Shipley streets, city of Wilmington, in this district, and Francis X. King, Harry F. King, and Ella M. Hess, as owners of such premises.

The owners have appeared and answered. Barnes, though served with process, has neither appeared nor answered.

The bill charges, in substance, that intoxicating liquor was sold, kept, and bartered on the premises in question, that such premises were maintained as a common nuisance, as defined by the National Prohibition Act (27 USCA), and that such nuisance was a continuing one. It prays that the court abate the nuisance, first, by enjoining the respondents from manufacturing and selling intoxicating liquor on the premises, and, second, by closing the premises to occupancy and use for one year. Attached to the bill of complaint were affidavits showing the sale of intoxicating liquor upon the premises October 14, 1930, October 17, 1930, October 30, 1930, November 5, 1930, and a search of the premises under a search warrant November 7, 1930. The bill of complaint was filed November 13, 1930.

The owners consented that a temporary injunction issue. The matter is now before the court, after a full hearing in open court on bill, answer, and oral evidence. The owners resist the issuance of a permanent injunction and the incorporation therein of a closure provision depriving them of the use of the premises.

It would serve no useful purpose to review the evidence tending to establish the fact that the premises in question were a common nuisance within the meaning of the National Prohibition Act (27 USCA) at and immediately before the filing of the bill of complaint in this proceeding. The evidence inevitably establishes that fact. The sole question in the case is whether the evidence furnishes reasonable ground for apprehension of a recurrence of such nuisance.

The premises in question, a three-story brick building with a saloon on the first floor, were received by the three owner defendants from their mother, Catherine F. King, at her death in February, 1922. Just before her death the property was leased by Francis X. King to Constantine Frank for ten years from March 25, 1922, at the rental of $2,400, $3,000 and $3,600 per year, with a provision in the lease against subletting without the consent of the owner. In violation of the terms of the lease, Frank sublet the saloon portion of the premises to Samuel Barnes in 1926 or 1927, and Barnes thereafter continued in possession. At the time the lease was executed certain alterations were made by Francis X. King, costing approximately $500, to better adapt the prem-

ises for use as a saloon and restaurant. None of the present owners have resided in Wilmington during the past eighteen years. Two of them have not been in Wilmington since the mother's death, and the third, Francis X. King, not since about 1927. There is no evidence that any one of the owners had personal knowledge of the sale of intoxicating liquor on the premises.

■■ A court of equity has power to abate a nuisance and decree a closure of the premises regardless of the owner's ignorance of the fact that the tenant was violating the law, and it is unnecessary that knowledge of the violation should be brought home to the owner. United States v. Boynton (D. C.) 297 F. 261; Farrell v. United States (C. C. A.) 21 F.(2d) 318; Engler v. United States (C. C. A.) 25 F.(2d) 37. Before the court can decree a permanent injunction, with or without a closure clause, there must be some evidence of the existence of a nuisance at the time or immediately before the institution of the proceedings, and there must be a reasonable apprehension on the part of the court that the premises will be used in the future for such unlawful purpose.

■ The evidence clearly establishes that intoxicating liquor was being sold on the premises. King testified that he was aware of the fact that there was a regular bar equipment, and that he made no personal investigation, but assumed "the place was being run as it should be run, according to law." The upper half of the door leading into the saloon was glass. The door was kept locked, and the lock was released by an electric button operated underneath the bar. Had King visited the premises, he would have learned of the above facts and been put upon notice that the business being carried on was probably illicit. Had he investigated further, he would have learned that Barnes pleaded guilty in this court, on June 13, 1930, to a violation of the National Prohibition Act (27 USCA). Such conviction would normally charge an owner with notice of the existence of a nuisance on his premises and impose upon the owner the duty of abating the nuisance or abiding the consequence of failure so to do. A nonresident owner cannot plead his nonresidence to escape such responsibilities. On November 17, 1930, in answer to a telegram from Barnes advising him of the institution of these proceedings, Francis X. King came to Wilmington and visited the saloon premises. He made an inspection on December 3, 1930, and states that he "found no traces of liq-

uors," but "heard a customer refused" a drink of whisky. Hearing this request from a patron, placed King upon notice that liquor probably was being sold on the premises.

King took no steps to evict Barnes or to cancel the lease. On the contrary, he recognized the lease by collecting, while in Wilmington, a month's rent for the premises. He took no step to abate the nuisance up to the time of the trial of this cause. Had King, upon learning of the facts, ousted Barnes and canceled the lease with his tenant, he would have placed himself in a more favorable position when it comes to the terms of the decree to be entered. A nuisance once shown to exist will be presumed to continue, especially in the absence of change of environment, Engler v. United States (C. C. A.) 25 F.(2d) 37.

On the whole, I am satisfied a nuisance has been established, that there are reasonable grounds to believe the nuisance will recur, that an injunction with a closure clause should issue, and that the costs of this cause should be paid by the owners.